UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIGUEL ANTONIO GALLEGO SOTO,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ et al.,<br>Respondents. | CASE NO. 2:26-cv-02557-LK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Miguel Antonio Gallego Soto's Amended Petition for Writ of Habeas Corpus. Dkt. No. 16. For the reasons stated below, the Court grants the petition.[1]

## I. BACKGROUND

Gallego Soto is a native and citizen of Mexico. Dkt. No. 8 at 1. He "entered the United States on an unknown date and at an unknown location, without being admitted or paroled." *Id.* Between 2006 and 2008, Gallego Soto was encountered by border patrol and given voluntary return to Mexico four times. *Id.* at 1–2. On August 5, 2021, he was "admitted into the United States at St. Paul, Minnesota as a non-immigrant B2 visitor with authorization to remain in the United

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

States for a temporary period not to exceed August 20, 2021." *Id.* at 2. He "has been present in the United States since his entry in August of 2021," Dkt. No. 16 at 2, and has three minor children, two of whom are U.S. citizens. Dkt. No. 16 at 7; Dkt. No. 9-1 at 4.

On May 4, 2024, in Ada County, Idaho, Gallego Soto was arrested for driving under the influence, Dkt. No. 8 at 2, and on September 27, 2024, he pleaded guilty, Dkt. No. 1-2 at 32. He then completed the terms of his sentence, which included five days in jail, Dkt. No. 8 at 2, and attendance at alcohol abuse classes, Dkt. No. 16 at 6, after which his DUI charge was "dismissed pursuant to a withheld judgment[.]" *Id.*; *see also* Dkt. No. 1-2 at 29–31.

On June 28, 2026, the Immigration and Customs Enforcement "(ICE") Boise, Idaho Fugitive Operations Team "conducted surveillance" and ran a license plate check for a "green ford ranger[.]" Dkt. No. 9-1 at 3. Records revealed that the registered owner was Gallego Soto, who "had legally entered the United States with inspection as a B2 visa on 08/05/2021," but had "remained in the country beyond his legal stay." *Id.* ICE "initiated a vehicle stop" and identified Gallego Soto as "the driver and sole occupant of the vehicle[.]" *Id.* Gallego Soto "was placed under arrest, and [ICE] Officer Moore then produced a Warrant of Arrest[.]" *Id.*; Dkt. No. 9-3 at 2. Gallego Soto was issued a Notice to Appear charging him as inadmissible pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), because although he was "admitted to the United States," he "remained in the United States beyond 8/20/2021 without authorization from the Immigration and Naturalization Service or . . . the Department of Homeland Security." Dkt. No. 9-5 at 2. Gallego Soto was eventually transported to the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 8 at 2.

On July 2, 2026, Gallego Soto requested bond from the immigration court in Tacoma, Washington. Dkt. No. 16 at 2. He was given a bond hearing on July 10, 2026. Dkt. No. 9-6. Immigration Judge ("IJ") John Odell denied bond, finding that Gallego Soto "failed to show that

he is not a Danger to the Community or a Flight Risk[.]" *Id.* at 2. Gallego Soto reserved appeal, which was due on August 10, 2026. *Id.* at 3. He did not file an appeal of his bond denial. Dkt. No. 17 at 4.

On July 24, 2026, IJ Odell found Gallego Soto removable and denied his applications for Asylum, Withholding of Removal under Section 241(b)(3) of the INA, Withholding of Removal under the Convention Against Torture, and Deferral of Removal under the Convention Against Torture. Dkt. No. 9-7 at 2. IJ Odell also denied his application for voluntary departure, and ordered him removed to Mexico. *Id.* at 3–4. Gallego Soto submitted a notice of appeal of his removal order to the Board of Immigration Appeals ("BIA"), which remains pending. Dkt. No. 12 at 2.

Gallego Soto filed his first petition for a writ of habeas corpus on July 20, 2026. Dkt. No. 1. Respondents[2] filed a return, Dkt. No. 7, and Gallego Soto filed a traverse, Dkt. No. 10. On August 25, 2026, this Court ordered the parties to file supplemental briefing, addressing whether Gallego Soto filed an administrative appeal of the IJ's denial of bond and whether he appealed the IJ's removability ruling. Dkt. No. 11. Gallego Soto's brief was due September 8, 2026, *id.* at 1, but he did not file his brief until September 11, 2026, Dkt. No. 12, and did not seek an extension or leave to file a late brief. He claimed that his counsel "was unaware of the order for supplemental briefing until September 9, 2026 due to the extraordinary number of deadlines implicated in her habeas and removal defense docket." *Id.* at 4. Respondents urge the Court to strike Gallego Soto's untimely supplemental brief. Dkt. No. 13 at 2. Because Gallego Soto has not demonstrated excusable neglect, Fed. R. Civ. P. 6(b)(1)(B), the Court declines to consider any argument in his

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

supplemental brief. On September 23, 2026, the Court ordered additional submissions due to deficiencies in both sides' filings: it ordered Gallego Soto to file an amended petition that complies with the verification requirements of 28 U.S.C. § 2242 and this district's Local Rules, and ordered Respondents to file a response and produce "any transcript or contemporaneous recording of the bond hearing, as well as any records submitted in connection with the bond hearing and the Immigration Judge's written decision (if any)." Dkt. No. 14 at 2–3. Gallego Soto timely filed his verified amended petition on September 30, 2026. Dkt. No. 16. Respondents filed a return to the amended petition, Dkt. No. 17, and Gallego Soto filed a traverse, Dkt. No. 20.[3]

## II. DISCUSSION

The parties agree that Gallego Soto is detained under 8 U.S.C. § 1226(a). Dkt. No. 16 at 5; Dkt. No. 17 at 2. Gallego Soto argues that his detention is unlawful "because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) denied his bond arbitrarily and in violation of his Due Process rights under the Fifth Amendment to the United States Constitution." Dkt. No. 16 at 2. He states that the IJ "denied his bond on the basis that he was a flight risk and a danger to the community," but "did not articulate any reasoning for this decision and issued a generic order with a box checked indicating that 'Respondent has failed to show that he is not a Danger to the Community or a Flight Risk.'" *Id.*[4]

---

[3] In filing a response to the amended petition, Respondents did not re-file the declaration of deportation officer Kurtis Reed. Dkt. No. 8. The Court ordered the parties to file additional submissions in part because Officer Reed asserted in his declaration that the IJ considered Gallego Soto's criminal history and certain testimony in denying bond, but Respondents provided no evidence of the IJ's considerations at the bond hearing, or that Officer Reed had personal knowledge of what the IJ considered. *Id.* at 2. Respondents did file Gallego Soto's "administrative record from his bond proceedings before the Immigration Court" in response to the amended petition, Dkt. No. 18 at 1, but nothing in the administrative record confirms the assertions in Officer Reed's declaration. *See* Dkt. No. 17 at 4 n.3.

[4] Gallego Soto later avers that he "was arrested and is detained in violation of his rights under the Fourth Amendment of the United States Constitution," and that the government's "'detain first, figure out later' approach they have employed is in itself a due process violation which can only be remedied by [his] immediate release from custody," *id.* at 8, but he does not provide any analysis on these points or explain how they apply to his case. The Court agrees with Respondents that it "should not entertain this entirely undeveloped argument." Dkt. No. 17 at 13. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies

Respondents argue that Gallego Soto is not entitled to habeas relief because he "has not exhausted available administrative remedies," and "[e]ven if the Court were to reach the merits of the Petition, [Gallego Soto] has failed to establish that the Immigration Judge's discretionary determination was a violation of due process or an abuse of discretion." Dkt. No. 17 at 2.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-*

on the advocates to inform the discussion and raise the issues to the court.").

*Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion is Not Required**

Respondents argue that Gallego Soto "has not exhausted his administrative remedies and he fails to demonstrate that the Court should waive the prudential exhaustion requirement." Dkt. No. 17 at 5. Respondents further argue that Gallego Soto's "appeal to the BIA will permit the agency to review the Immigration Judge's weighing of the *Guerra* factors de novo while reviewing underlying factual findings for clear error and would create a complete administrative record." *Id.* at 6. Gallego Soto argues that the Court should waive prudential exhaustion because "agency expertise will not yield a proper record" of the unrecorded bond hearing and he raises "constitutional challenges to the adequacy of his bond hearing, which are better suited to review by the federal courts[.]" Dkt. No. 20 at 7–8.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when

requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing*, 370 F.3d at 1000.

In light of the unique facts of this case, the Court exercises its discretion to not require exhaustion. Specifically, the IJ's decision—and the utter lack of rationale justifying that decision, as discussed below—"is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26 CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And if most IJs begin issuing decisions with similarly deficient reasoning, risk of encouraging deliberate bypass of the administrative scheme is the least of this Court's concerns. *Id.*

**C. The IJ Abused His Discretion**

Respondents assert that Gallego Soto challenges the IJ's "discretionary judgment," which the Court does not have jurisdiction to review. Dkt. No. 17 at 8. Respondents further argue that the IJ may "consider allegations of serious criminal conduct regardless of whether those allegations ultimately resulted in a formal conviction." *Id.* at 11. Gallego Soto argues that federal courts may review the IJ's denial of bond for abuse of discretion, as Respondents are "unwilling[] to provide a constitutionally satisfactory bond hearing to individuals like [him]." Dkt. No. 16 at 5, 10.

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in

> the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the above standard is a reviewable mixed question of fact and law, even though what constitutes a risk of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)); *see also Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1077–78 (W.D. Wash. 2026) (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026) (same).

Accordingly, the allegations in Gallego Soto's habeas petition—that the IJ abused his discretion when he determined that Gallego Soto was a danger to the community and flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review.

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of evidence at his bond hearing, *see Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *8–9 (W.D. Wash. Feb. 23, 2026), the Court finds that the IJ abused his discretion in this case. *See Martinez*, 124 F.4th at 779.

The record before the Court is devoid of any indication that the IJ considered any of the evidence submitted by Gallego Soto in relation to the bond hearing[5] or weighed the relevant

[5] Gallego Soto submitted a memorandum in support of his motion for a bond hearing along with exhibits, including proof that his criminal charges were dismissed and an order granting withheld judgment, the birth certificates and school records of his children, a copy of his lease, and letters of support. Dkt. No. 19 at 9–11, 15–27, 30–37, 59–64, 72–85, 87–89, 92. The Department of Homeland Security submitted the I-213 Form, "Record of Deportable/Inadmissible Alien." *Id.* at 5–8.

*Guerra* factors in making the dangerousness determination. In considering whether a noncitizen is a danger, IJs may consider the noncitizen's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses," even if "serious criminal activity . . . had not resulted in a conviction"—but the evidence supporting that criminal record must be "probative and specific." *In Re Guerra*, 24 I. & N. Dec. 37, 40–41 (BIA 2006). In *Matter of Siniauskas*, the BIA identified drunk driving as "an extremely dangerous crime," but stated that under *Guerra*, "it is proper for the Immigration Judge to consider not only the nature of a criminal offense but also the specific circumstances surrounding the [noncitizen's] conduct." *Id.* at 208. 27 I&N Dec. 207, 208 (B.I.A. 2018). The Ninth Circuit has also made clear that an IJ must consider "the recency and severity of the offenses" when determining dangerousness. *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011); *see also Obregon v. Sessions*, No. 3:17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) ("courts must consider the remoteness of the DUI and intervening events that might undermine a finding of dangerousness").

Here, the bond denial decision consists solely of a checkbox form in which "Respondent has failed to show that he is not a Danger to the Community or a Flight Risk" is checked. Dkt. No. 9-6 at 2. The form does not mention the *Guerra* factors, much less consider them, and there is no evidence that the IJ explained his reasoning or weighed any factor other than Gallego Soto's criminal record at the hearing. Due process requires the IJ to set forth his reasoning at the time of the bond hearing. *Garcia-Merino v. Hernandez*, No. 26-CV-1911, 2026 WL 2137819, at *4 (W.D. Wash. July 24, 2026). Respondents make no effort to argue that the IJ's finding of dangerousness to the community or flight risk are supported by the record or that the IJ meaningfully engaged with contrary evidence and performed the required weighing under *Guerra* at the bond hearing. Instead, Respondents argue that the IJ may consider "criminal conduct regardless of whether those allegations ultimately resulted in a formal conviction." Dkt. No. 17 at 11. While this is true, that

does not mean that any detainee with a DUI is necessarily dangerous. *Jaime Crispin Martinez, Petitioner v. John Mattos, et al., Respondents*, No. 2:26-CV-01427-JAD-BNW, 2026 WL 3001109, at *4 (D. Nev. Oct. 6, 2026) ("I do not find that *Siniauskas* always requires a dangerousness finding for detainees with DUIs. While criminal history is the most important *Guerra* factor, the IJs must consider the extensiveness of the criminal history and the recency and seriousness of the offense."). In *Matter of Siniauskas*, the BIA denied bond for a petitioner with three DUI convictions in one year and another DUI arrest ten years later, where two of the four arrests or convictions involved car accidents. 27 I&N Dec. at 207–10. In contrast, Gallego Soto's criminal history consists of a single DUI, and he submitted evidence that he successfully completed rehabilitative programming to dismiss the charge, and has since stopped consuming alcohol altogether. Dkt. No. 1-3 at 15, 19; Dkt. No. 19 at 87. The record does not reflect that the IJ considered the circumstances surrounding the offense, its recency, or its severity, as required by BIA and Ninth Circuit precedent.

For these reasons, the IJ failed to accord Gallego Soto the process due to him, abusing his discretion and violating his Fifth Amendment rights. *See Zhamagortsyan v. Warden, Adelanto ICE Processing Center et al.*, No. 5:26-CV-04093-DTB, 2026 WL 2876062, at *8–9 (C.D. Cal. Sept. 24, 2026) (finding due process violation and ordering release where the IJ improperly determined that petitioner was a danger to the community "without considering or discussing any distinguishable facts underlying Petitioner's single arrest for driving under the influence."); *Hernandez v. Scott*, No. C26-2549-KKE, 2026 WL 2814250, at *2 (W.D. Wash. Sept. 20, 2026) (finding that the IJ abused his discretion by finding that the petitioner was a flight risk and danger to the community where it was clear the IJ only considered the petitioner's recent DUI conviction); *Sabillon Munoz v. Scott*, No. 2:26-CV-02420-TL, 2026 WL 2694273, at *6 (W.D. Wash. Sept. 14, 2026) (finding that the evidence presented at the petitioner's bond hearing could not have

supported the conclusion that the petitioner posed a danger or flight risk where the petitioner had only a pending DUI charge).

**D. Remedy**

Having found a due process violation, the Court considers the appropriate remedy. Gallego Soto requests immediate release, or alternatively, "a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days requiring [Respondents] to establish by clear and convincing evidence that he is a danger to the community or a flight risk[.]" Dkt. No. 16 at 11–12. Respondents argue that the proper relief is not release, but rather "an order directing the Immigration Judge to issue a written bond memorandum setting forth complete reasoning for the bond denial." Dkt. No. 17 at 12–13. However, this is not a case where the record needs to be further developed. *See*, *e.g.*, *Lueth v. Scott*, No. 2:26-cv-01170-SKV, Dkt. No. 14 at 7 (W.D. Wash. May 1, 2026) (requiring exhaustion because "initiating an appeal was necessary to develop the record, to clarify the IJ's reasoning, and for the parties and this Court to discern whether any constitutional error or harm transpired."). Under these circumstances, ordering release rather than a written decision is warranted. *See*, *e.g.*, *Montero-Cruz v. Scott*, No. C26-3193-MLP, 2026 WL 3060006, at *6 (W.D. Wash. Oct. 13, 2026) (ordering release of petitioner who pled guilty to a DUI and completed a diversion program resulting in dismissal of the charge); *Estrada Gutierrez v. Hernandez*, No. 2:26-CV-02966-SAB, 2026 WL 3073390, at *4 (W.D. Wash. Oct. 14, 2026) (ordering release where the petitioner was convicted of a DUI and the record did not reflect how the IJ determined the petitioner to be a danger to the community or flight risk).

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the amended petition for habeas corpus, Dkt. No. 16, and orders as follows:

1. Respondents shall release Gallego Soto from custody within 24 hours under terms consistent with 1226(a);

2. The parties shall file a Joint Status Report by October 26, 2026, confirming that Gallego Soto has been released;

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 23rd day of October, 2026.

Lauren King
United States District Judge